## Case No. 8,853.

### McKENNEY et al. v. BAKER.

[2 Hask. 130.] [1]

District Court, D. Maine. Jan., 1877.

BANKRUPTCY — RENEWED COMMERCIAL PAPER — RETIRED TRADER—ACCOMMODATION PAPER.

1. Renewed commercial paper subjects a trader to the same legal consequences under the bankrupt act [of 1867 (14 Stat. 517)] that the original promise did.

2. A retired trader, who gives his negotiable promissory note for a trade debt, does not commit an act of bankruptcy by suspending payment of the same, for it is not his commercial paper, made and passed in trade.

3. Accommodation paper, signed by a trader, is not his commercial paper under the amendment of 1874 [18 Stat. 178].

In bankruptcy. Petition by the creditors of Jacob C. Baker, charging him with an act of bankruptcy in the non payment of his negotiable promissory note for the period of forty days after it fell due, the same having been made and passed by him in the business of a trader. Baker answered, denying that he was a trader when he gave the note, or that the same was his own commercial paper, or that he made and passed the same in the business of a trader. The cause was heard upon petition, answer and proof.

William L. Putnam, for petitioners.

Hanno W. Gage and Sewall C. Strout, for respondent.

FOX, District Judge. This is a proceeding by the creditors of Mr. Baker to have him adjudged a bankrupt, "for that being a merchant and trader, he has suspended and not resumed payment of his commercial paper for more than forty days." The commercial paper thus overdue is set forth in the petition as three notes of Baker, amounting in the aggregate to $2,000, all bearing date of November 16, 1875, payable by Baker to Chas. W. McKenney or order in three months, and given for lumber sold by McKenney to Baker.

In his answer, Mr. Baker denies that he was a merchant or trader at the giving of said notes, and says that the same were not his commercial paper, within the meaning of the bankrupt law, but were made by him for the accommodation of A. L. Hobson and

---

[1] [Reported by Thomas Hawes Haskell, Esq., and here reprinted by permission.]

for his benefit, and were to be paid by Hobson at their maturity.

It appears in evidence that for some years prior to May, 1875, Mr. Baker had been a trader in Portland, dealing in pressed hay, straw, flour, short lumber and potatoes, shipping to Southern ports these various articles as the markets might justify; that on one or two occasions only, and many years since, had he shipped lumber of any kind to the West Indies.

It did not appear that he had ever traded in heading in any way until the transaction with McKenney in May, 1875. It was not questioned that on the afternoon of May 3, 1875, Baker sold out his entire stock in trade to O'Brien, and gave up to him his counting room and place of business, continuing to occupy desk room there for a short time to close up his accounts, but not being engaged in trade. On the third day of May, 1875, A. L. Hobson, who was the brother-in-law of Baker and then engaged in the West India trade, was desirous of obtaining from C. W. McKenney, a manufacturer of lumber, 25,000 pair of heading. McKenney, not being satisfied with Hobson's credit, was unwilling to sell the heading to Hobson, but would sell to Baker; during the forenoon of that day, May 3d, it was agreed between these parties that Baker should purchase the heading of McKenney, and that he should receive for it the notes of Baker from time to time as the heads were delivered, to be brought in on the cars from Buxton at McKenney's charge, but in the name and to the address of Baker. Hobson agreed with Baker to pay his notes given to McKenney as they should fall due. The heads were all delivered as agreed, and with the assent of Baker, were received by Hobson and by him disposed of. On the thirteenth of May there was $2,000 due to McKenney for heading delivered under this contract, and on that day he called on Baker for his note for that sum, which he received and caused to be discounted. When it fell due, it was renewed by Baker, and the renewal note not being paid, the three notes of Baker described in this petition, amounting to $2,000, were received therefor by McKenney and have never been paid.

The notes of Baker now held by McKenney, being renewals of one received for the note of $2,000 given by Baker to McKenney May 13, 1875, it is claimed by the petitioners that under the bankrupt act the court must look to the date of the original note; that the rights and liabilities of the parties are to be determined as of that date; that the renewals are not to be considered as payments of the primary note, but as mere extensions from time to time of the original liability; and that the question here to be decided depends upon whether the note given by Baker on the thirteenth of May is to be deemed his commercial paper made or passed by him in the course of his business as a trader.

In the opinion of the court, the new security must be regarded as a substitute for the original note. This, in reality, has never been paid, but the time of its payment has been extended, and the party has not, by such an extension, been discharged from any liability under the bankrupt act, to which he was subjected by the original promise; but he remains charged with all the legal consequences which the note of May 13th imposed upon him. Such was the opinion of the lord justices in Ex parte Griffiths [3 De Gex, M. & G. 175] hereinafter referred to, a case in this respect parallel with the present.

Was this note of May 13th Baker's commercial paper made and passed by him as a trader? It is not claimed that at that date he was then in fact a trader, engaged in trade as before, or carrying on business excepting in completing the purchase of the heading; but it is urged that on May 3d, in the forenoon, he was in trade as he had been for years, and as a trader, then contracted to purchase of McKenney the heading; that from time to time McKenney under and by virtue of and in performance of this contract sent forward to Baker's address the heading; and that in this behalf Baker's dealings as a trader were not completed and determined until all the heading was delivered and paid for; and that in all that he did under this contract in receiving the heads by his agent, Hobson, and in giving the note of August 13th, he was acting as a trader; that although he might have previously withdrawn from his other business, until payment was actually received for the heading, he could not by thus retiring from trade exonerate himself from the consequences growing out of this transaction.

Taking this transaction singly and alone, I am of opinion under the peculiar circumstances attending it, that it would hardly have constituted Baker a trader within the law. While the title to the heads did numerically vest in Baker, and he agreed to become accountable to McKenney for the payment of the agreed price, yet it was part of the arrangement that this was all for the benefit and use of Hobson, who was to take care of the notes of Baker as they matured, and on this account was to receive the headings as they were delivered.

Baker was not to sell the heading to Hobson in the ordinary usual course of trade; but the actual trading was between McKenney and Hobson with a right to demand of Baker his negotiable paper for the property. In this way he became, in one view, the purchaser of the heading, but not for his own benefit; and it is beyond question that if this transaction was the only evidence to constitute Baker a trader, it would not be within the act. By his former dealings, and not by this, was he a trader on May 3d, and when he entirely withdrew from the business he had before carried on, his carrying out the contract with McKenney, so far as he was required by its terms, did not con-

tinue him in trade as a trader within the purpose of the bankrupt law.

It is said that having been a trader May 3d, he could not, by abandoning trade. devest himself of the consequences resulting from such occupation, and that he remained a trader until the debts he owed when a trader were all discharged. Great reliance is placed upon the case of Ex parte Griffiths, 3 De Gex, M. & G. 175, before the lord justices. In that case a trader contracted a bond debt in 1839. He continued a trader until 1848. Judgment was recovered on the bond in 1850. Lord Justice Knight Bruce, in his opinion, says: "I apprehend that by the spirit and intent of the bankrupt law, according to principle equally and authority, these two rules are clearly established: First, that a trader, who, after becoming indebted, leaves off trading, is not to be heard to say to his creditors that the trading has been left off, if a question arises whether the debtor can or cannot be as a trader made bankrupt; secondly, that a bond, in the case of a simple contract, or a judgment in the case of a specialty, which for many purposes extinguishes (though not satisfying) the original debt, does not do so as against the creditor for the purpose of disabling him from making his debtor a bankrupt on the original debt, remaining in every sense, or in every other sense, unsatisfied."

Lord Justice Turner (page 178) says: "Then it is said that the respondent is not a trader under the 72d section of the bankrupt law consolidation act, because he ceased to trade in 1848; but as he had been a trader, and the debt existed during the trading, he must be considered as a trader still, so long as the debt is not paid."

The same principles are recognized in Stronge v. Hawkes, 3 De Gex & J. 70. In Bailie v. Grant, 9 Bing. 122, Chief Justice Tyndal, says: "The debt contracted before trade, but remaining unpaid at and after the time the debtor enters into trade, appears to us to be a subsisting debt for every purpose and subject to any consequences which belong to a debt originally contracted during trade."

The English bankrupt law then in force required as a foundation for proceedings against a trader for a commission in bankruptcy, that he should be indebted on a demand which was outstanding against him while he was, in fact, a trader; and under such circumstances, he was liable to be adjudged bankrupt, although he had left off trading. This liability, by reason of such indebtment as a trader having once attached, continued so long as the debt remained unsatisfied.

English decisions of a later date may perhaps create a doubt whether the same consequences would result under the bankrupt act, as in Ex parte Bailey, L. R. 13 Eq. 321. Bacon, C. J., says: "Then as to the point of the debt or some part of it having been contracted while the debtor was a trader, I am of opinion that the existing statute has, in this respect. no retrospective operation, and that it speaks of and refers only to such persons as, at the time of its commencement, were, or should afterwards become traders."

In Wms. Bankr. Prac. 24, in commenting on this language, the learned authors say: "It would seem clear that if the existence of debts contracted whilst in trade is in itself sufficient to constitute a man a trader, no question as to whether the act was retrospective would have arisen in this case, because trade debts were still existing at the time of the petition, which was in 1871, and therefore, this case would seem to be an authority that under the present act actual present trading was necessary."

In Re Schomberg, 10 Ch. App. 174, each of the lord justices declares that the language of the act, "the debtor being a trader has for the space of seven days &c.," must mean a trader at the time the summons was served; but as I read the case, the learned justices found that the debtor in that case was not a trader at the contracting of the debt or subsequently, so that the question as to the effect of the existence of a debt whilst a trader did not arise.

In my opinion however, it is not essential for the purposes of the present case to determine whether or not under the present bankrupt law of England the rule is different from that established by the decisions under former acts. Conceding that a commission in bankruptcy could in the English tribunals now be sustained by an act of bankruptcy, committed by a trader after retiring from trade, the debt having been contracted by him in the course of his trading, I am of opinion that under the provisions of the bankrupt law as amended by congress, the party is not subject to be decreed a bankrupt for non payment of his negotiable paper. given by him after retiring from trade in settlement of a trade debt.

In England it may be necessary that there should be a debt outstanding. contracted or owing by him whilst in trade to subject the debtor to bankruptcy. This debt still continues after the party retires from trading. It remains a subsisting debt just as before, burdened with all the consequences which originally belonged to it while the party was in business. Thereafterwards no new consequences arise from its remaining unpaid, or attach to it afterwards; but it simply exists and continues, without change or modification. affecting the debtor as it did originally, but not increasing or diminishing his liability. As a trader he owed this debt. In that state it afforded a basis for bankruptcy proceedings. and by his ceasing to be longer a trader, the party ought not to be thereby relieved from any consequences to which he was then subjected on account of it.

Under our bankrupt act, so long as a party refrains from issuing his commercial paper

as a trader, however much he may be indebted in other ways, he is not liable to any of the provisions of the bankrupt law, and on account of such other indebtment could never be adjudicated a bankrupt. Such liabilities do not afford any foundation for proceedings in bankruptcy against a trader; and while they are subsisting debts for every purpose, and subject to every consequence which belongs to a debt originally contracted during trade, they do not entail any other consequences than those which exist while the party remains a trader.

If a trader under our law is liable to be subjected to bankruptcy on account of his general indebtedness, and should withdraw from trade, he would still remain liable to be put into bankruptcy so long as such debts are unsatisfied; but as by our law a trader is not liable to be thrown into bankruptcy on account of such debts, but only when the same are merged in commercial paper does the liability of bankruptcy follow, after it has been made and passed by a trader, and he has allowed it to remain overdue and unpaid the forty days made requisite by the act. If such paper is not put in circulation by a trader during the time he is actually in trade, it would be a strained and forced construction of our statute to hold that if made and passed months or years after withdrawal from trade, in discharge of a trade debt, it thereby becomes within the act commercial paper, then made and passed by a trader in the business of trade, when for years he had not bought or sold, in the way of trade, a dollar's worth of property.

A debt originally contracted by a trader may well be said to be a trade debt, due from a trader even when he has long been withdrawn from trade, and he continues liable to all the consequences, which attached to the debt in its then condition, but to none others; by giving his negotiable paper in settlement of the debt after he has retired from business, the relations of the parties ought not to be changed; each should stand as far forth as practicable in the positions they were previous to the making of the note, and thereby neither should acquire or lose any rights. Such is in fact the substance and effect of the English authorities, relied on by the petitioners. No one of them asserts that any new rights attach subsequently to the old debt; but they remain exactly as before, the debtor's ceasing to be a trader having no effect whatever; and in my view, such is the true construction of this provision of our law.

In the case of Re Jack [Case No. 7,119], before Woods, J., in the circuit court in Georgia, the head note is, "that a person, who gives a note when he has ceased to be a trader, does not commit an act of bankruptcy by suspending payment thereof, although the note is given for a debt contracted while he was a trader; for the law requires that he should be a trader at the time of making of the note." The opinion of the learned judge on this point is brief, and does not refer to any authorities, and the case was decided upon section 39 of the bankrupt act. It is similar to the present, and, being the judgment of the circuit judge, is of great weight, although not conclusive in another circuit.

The opinion of Hoffman, J., in Re Stevens [Case No. 13,393], it is claimed would lead to a different result. In that case, a firm were manufacturers; one member died; Stevens, the survivor, in settling the affairs of the firm and closing up its business, gave a draft in payment of a debt of the firm, contracted in the course of its business, which draft, having been protested, was the basis of the petition as an act of bankruptcy, and the petition was sustained. The report of the case is not very satisfactory. It does not appear but that Stevens still continued in business as a manufacturer after the death of his copartner; nor is it stated what was the nature of the debt for which the draft was given, whether it was or not commercial paper. The proceedings were prior to the amendatory act of 1874, by which, as I hold, the law in this respect was much limited and restricted, and the case of Re Stevens [supra] is therefore of but little assistance in the determination of the questions now before the court.

If this view of the law is erroneous, there still remains another ground upon which, as I think, this petition can not be sustained. I hold, that under the circumstances of the present case, this note of the respondent's of May 13th, can not, within the act, be considered "the commercial paper of Baker, made or passed in the course of his business as a trader."

The trade with McKenney for the heading was for Hobson's benefit solely; and he was to receive and dispose of it as he saw fit. McKenney was to have Baker's notes for the heading, but Hobson was to pay these notes as they matured, and they with their renewals are all entered among his "bills payable," and I am satisfied McKenney was cognizant of the agreement. All that he asked for was a direct and absolute claim upon Baker for the payments, and having obtained that, he was content, although he well understood that Hobson had agreed with Baker to protect him from these notes, and that Baker was not to be primarily liable, but that throughout the transaction, he was acting, not in his own behalf as the purchaser of the property, but simply for the advantage and accommodation of Hobson and as a guarantee of the payment by Hobson to McKenney.

Prior to the amendment of the bankrupt act in 1874, there existed a serious conflict in the decisions of the various tribunals upon the question whether one was liable to be adjudged a bankrupt by reason of non payment of negotiable paper to which he was a party for the accommodation of a third party. Since the passage of that amendment, I think the courts must decide that such paper is not

brought within the act, and is not to be deemed the commercial paper of a trader made or passed by him in the course of his business as a trader. The object of this amendment was to restrict this liability within a much narrower range, and to confine it to a trader's own business paper by him negotiated in the course of, and directly connected with such business, and for his own purposes and benefit, and which he was bound to meet promptly at its maturity, and not to include what is known as accommodation paper which the party never expects to pay, and therefore does not ordinarily provide for as it falls due. Such paper would, of course, be provable against the estate if the debtor became bankrupt; but I can not think its non payment for forty days is now to be deemed an act of bankruptcy, as it is not his own business paper and does not arise or grow out of his business as a trader, but is wholly extraneous. Petition denied.

---

McKENNEY (FOXALL v.). See Case No. 5,016.

McKENNY (BANK OF COLUMBIA v.). See Case No. 874.

McKENNY (BANK OF THE UNITED STATES v.). See Case No. 926.

McKENSIE (BANK OF THE UNITED STATES v.). See Case No. 927.